**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**JOSIE BELLIARD,**

    **Plaintiff,**

**v.**　　　　　　　　　　　　　　　　　　　　　　**Case No.  8:06-cv-1193-T-30MSS**

**LEONARD M. VINCENTI,**

    **Defendant.**
_____/

## ORDER

THIS CAUSE comes before the Court upon Defendant, Leonard M. Vincenti's, Motion for Summary Judgment (Dkt. #82), Defendant's Notice of Filing in Support of Motion for Summary Judgment (Dkt. #83), Plaintiff's Response to Defendant's Motion for Summary Judgment (Dkt. #88), and Plaintiff's Amended Response to Defendant's Motion for Summary Judgment (Dkt. #93).  The Court, having considered the motion, responses, affidavits, exhibits, memoranda, and being otherwise advised in the premises, concludes that Defendant's Motion for Summary Judgment should be granted.

**Summary Judgment Standard**

Summary judgment is appropriate only where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  "A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor."  *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995).  At the summary judgment stage, the judge's function is not to "weigh the evidence and determine the truth

of the matter, but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby*, 477 U.S. 242, 249 (1986). The existence of some factual disputes between the litigants will not defeat an otherwise properly supported summary judgment motion. *Anderson* at 248. The substantive law applicable to the claimed causes of action will identify which facts are material. *See id.*

In considering a motion for summary judgment, the court views all evidence in the light most favorable to the party opposing the motion. *Harris v. H & W Contracting Co.*, 102 F.3d 516, 519 (11th Cir. 1996). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. If the movant meets this burden, the burden then shifts to the nonmoving party to establish that a genuine dispute of material fact exists. *See Hairston v. Gainesville Sun Pub. Co.*, 9 F.3d 913, 918 (11th Cir. 1993).

**Background**

*Pro se* Plaintiff, Josie Belliard ("Belliard"), brings a legal malpractice action against Defendant, Leonard M. Vincenti ("Vincenti"), the attorney who represented her in a medical malpractice action which was dismissed with prejudice on September 16, 2003, by Hillsborough County Circuit Court Judge Herbert Baumann, Jr.

On October 19, 2000, Belliard underwent an elective cosmetic surgical procedure involving her left eyelid which was performed by Dr. Holliday, now deceased. Belliard was immediately dissatisfied with the cosmetic result of the surgery. On October 30, 2000, Belliard visited Dr. Justin Older, M.D. for examination and consultation. Dr. Older advised her that it was too early to evaluate the surgery, that she should wait at least six months

before making any judgment as to the result, and that she should continue to follow the matter with Dr. Holliday.

Dr. Older's records show that Belliard disagreed with his opinion. On November 3, 2000, Belliard called Dr. Older and told him that she was not pleased with his diagnosis, that she was cancelling payment by stopping payment on the check that she had given him, and she instructed Dr. Older to not give any information to any other referring doctors.[1]

After consulting several other doctors after her surgery, Belliard retained Vincenti on May 20, 2001, to investigate and pursue a medical malpractice case against Dr. Holliday. During the course of this representation, Belliard disclosed the identity of several of the physicians which had subsequently treated or examined her, however, she did not disclose to Vincenti, or Dr. Holliday's defense attorney, the identity of Dr. Older or the examination performed by Dr. Older. Furthermore, Belliard did not disclose her consultation with Dr. Older in her discovery deposition by defense counsel or in her answers to interrogatories from defense counsel.

On April 7, 2003, almost two years after the initiation of her malpractice case and ongoing discovery proceedings therein, Vincenti's office notified Plaintiff that the defense wanted an IME and had scheduled her for examination with Dr. Slonin, to be conducted on June 3, 2003. On April 14, 2003, upon being advised of the scheduled IME, Belliard contacted Vincenti's secretary and told her that she recognized the address of the doctor's office and checked on the internet and figured out that Dr. Slonin was a partner of Dr. Older,

---

[1] *See* Dkt. #83, Exhibit "B".

and that she "didn't think it would be fair [to her] to have to live with the opinion of someone that was friends with Dr. Older."[2] Such conversation revealed for the first time to Vincenti and/or his staff Belliard's previous consultation with Dr. Older. On the same day, Belliard sent an email to Vincenti's secretary stating, in pertinent part: "I could always leave to disclose the info right after the IME, or right at the mediation. Whatever Mr. Vincenti thinks it's [sic] best. Please make sure not to keep this message on my file."[3] Vincenti concurred with Belliard's suggestion that she discuss the issue with Slonin during her IME.

After April 14, 2003, but before June 3, 2003, defense counsel for Dr. Holliday became aware of the identity and role of Dr. Older. Accordingly, defense counsel cancelled the IME. The parties did attend mediation, but were unable to reach a settlement. Soon thereafter, Vincenti filed a motion to withdraw as counsel for Belliard based on "irreconcilable differences". On June 24, 2003, during a telephonic hearing Belliard consented to Vincenti's motion to withdraw as counsel.

After Vincenti withdrew from Belliard's medical malpractice case, defense counsel for Dr. Holliday filed a Motion to Dismiss for Fraud on the Court.[4] On August 20, 2003, the Circuit Court held a hearing as to the Motion to Dismiss for Fraud on the Court which Belliard attended by telephone. On September 16, 2003, the Circuit Court entered an Amended Final Order and Judgment of Dismissal With Prejudice against Belliard and in

---

[2] *See* Dkt. #93-2, page 39.

[3] *See* Dkt. #83, Exhibit "C".

[4] *See* Dkt. #93-2, page 50-52.

favor of the defense. The Amended Final Order and Judgment of Dismissal With Prejudice states, in pertinent part:

> The Court conducted a lengthy colloquy with Plaintiff. Plaintiff acknowledged that she had seen and been examined by Jay Older, M.D. on October 30, 2000, and that she called Dr. Older's office on November 3, 2000. The Court finds that during that conversation, Plaintiff advised Dr. Older that she was not pleased with his diagnosis or opinions, that she was cancelling payment on the check written to pay for her October 30th examination, and that Dr. Older should not give any information about her to any referring doctor. Plaintiff acknowledged to the Court that she does not routinely cancel checks she has written. Plaintiff advised the Court that she did not disclose Dr. Older's name in answer to Defendant's Interrogatories nor did she reveal his name in response to questions posed to her during deposition.
>
> * * *
>
> There is simply no issue that Dr. Older's name should have been disclosed in response to discovery inquiries since he examined the results of the surgery which gave rise to this action within two weeks of that procedure. The information is probative and is important to the evaluation and defense of the claim.
>
> The Court finds that Plaintiff has provided no reasonable or credible excuse or justification for her failure to disclose the identity of Jay Older, M.D. in discovery. Rather, the Court finds the Plaintiff intentionally concealed Dr. Older's examination and name to thwart the discovery process. Further, the Court finds that Plaintiff has not provided any credible evidence that a poor memory was responsible for her failure to disclose the identity of Dr. Older. Based upon the Court's lengthy conversation with Plaintiff as well as the matters of record submitted to the Court, the Court finds that Plaintiff is intelligent, conversant in the English language and without any cognitive or memory impairment. The Court finds that Plaintiff intentionally misrepresented material facts and gave false testimony which constitutes a fraud upon the Court and did so for the purpose of obstructing the Civil Justice System. The Court further finds that Plaintiff's contention that the failure to disclose should be overlooked, given the nature of the injury, is an affront to the Civil Justice System. It is ORDERED AND ADJUDGED that Plaintiff's Amended Complaint should be and is DISMISSED WITH PREJUDICE and that Plaintiff, Josie Belliard, takes nothing by this action.

In this action, Belliard seeks to hold Vincenti accountable for the dismissal with prejudice of her medical malpractice action. Belliard alleges, in relevant part, that Vincenti was negligent and/or committed malpractice and breached fiduciary duties to her by failing to advise her to immediately disclose her consultation with Dr. Older to the defense, and/or by advising her to wait until the scheduled IME or mediation to disclose the same. Additionally, Belliard alleges that Vincenti was negligent by failing to explain to her that "even if she could not remember names connected to the case, at least she should disclose the event."[5]

## Discussion

Under Florida law,[6] a plaintiff bringing a legal malpractice claim must demonstrate: (1) the attorney's employment; (2) the attorney's neglect of a reasonable duty; and (3) the attorney's negligence resulted in and was the proximate cause of a loss suffered by the plaintiff. *See Kates v. Robinson*, 786 So.2d 61, 64 (Fla. 4th DCA 2001); *Olmstead v. Emmanuel*, 783 So.2d 1122, 1125 (Fla. 1st DCA 2001); *Hold v. Manzini*, 736 So.2d 138, 142 (Fla. 3d DCA 1999); *Tarleton v. Arnstein & Lehr*, 719 So.2d 325, 328 (Fla. 4th DCA 1998). Similarly, a plaintiff bringing a fiduciary duty cause of action must prove: (1) the existence of a fiduciary duty; (2) a breach of that duty; and (3) that the breach of the fiduciary duty resulted in and was the proximate cause of a loss suffered by the plaintiff. *See Gracey v. Eaker*, 837 So.2d 348, 353 (Fla. 2002).

---

[5] *See* Complaint, Dkt. #2.

[6] In this case, this Court's jurisdiction is based upon its diversity jurisdiction, 28 U.S.C. § 1332, and this case arises under Florida law.

Vincenti's motion for summary judgment argues that Belliard has failed to offer any evidence demonstrating that Vincenti was negligent or that Vincenti's negligence, if any, resulted in and was the proximate cause of the dismissal with prejudice of Belliard's medical malpractice case in state court. After close consideration, this Court concludes that summary judgment in Defendant's favor is appropriate as to the issue of causation.

The Court acknowledges that in negligence cases "the determination of proximate cause is ordinarily a question that should be left for a jury." *Gulfstream Parl Racing Assoc., Inc. v. Gold Spur Stable, Inc.*, 820 So.2d 957, 960 (Fla. 4th DCA 2002). In the rare case, however, where either the facts or the law favor resolution by summary judgment, summary judgment is appropriate.[7]

In order to demonstrate proximate cause in a legal malpractice action, a plaintiff must introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a substantial factor in bringing about the result. *See Proto v. Graham*, 788 So.2d 393 (Fla. 5th DCA 2001). "A mere possibility of such causation is not enough; and when the matter remains one of pure speculation or conjecture, or the probabilities are at best evenly balanced, it becomes the duty of the court to direct a verdict for the defendant. *Proto* at 396, quoting *Gooding v. Univ. Hosp. Building, Inc.*, 445 So.2d 1015, 1018 (Fla. 1984).

---

[7] *See e.g., Gresham v. Strickland*, 784 So.2d 578, 581-82 (Fla. 4th DCA 2001) (concluding summary judgment was appropriate on causation); *Brennan v. Ruffner*, 640 So.2d 143, 147 (Fla. 4th DCA 1994) (affirming grant of summary judgment in breach of fiduciary case on lack of causation against lawyer based on undisputed facts); *Chipman v. Chonin*, 597 So.2d 363, 364 (Fla. 3d DCA 1992) (stating that "where reasonable minds cannot differ, proximate cause becomes a question of law").

This Court concludes that summary judgment is appropriate because the record reflects that Belliard's medical malpractice claim was dismissed with prejudice based on **her** intentional concealment of Dr. Older's examination throughout the discovery process, **her** failure to disclose Dr. Older's name in her answer to defendant's interrogatories served in April of 2002, and **her** failure to reveal his name in response to questions posed to her during her deposition. Plaintiff acknowledges that she visited Dr. Older on October 30, 2000. Plaintiff acknowledges that she was not pleased with his diagnosis, and did not want it to be part of her medical malpractice case. Plaintiff also acknowledges that she did not disclose Dr. Older's name to anyone, including Vincenti and his staff, until April 2003 (two and a half years after her consultation and almost two years after the initiation of the law suit). Nevertheless, Plaintiff dismisses her own repeated and intentional failures to disclose; and instead, asserts that it was Vincenti's negligent advice (that she "wait until the IME or mediation" to disclose Dr. Older's name) that caused her case to be dismissed. Notably, the IME and mediation were scheduled to occur, respectively, on June 3, 2003, and June 4, 2003. Thus, at most, Vincenti recommended delaying disclosure for a five week period.

Vincenti's negligence, if any, does not appear to be the basis of Judge Baumann's decision to dismiss Belliard's medical malpractice case with prejudice. From a reading of the dismissal order, it is clear that Judge Baumann's finding that Belliard intentionally concealed Dr. Older's examination and name to thwart the discovery process was based on Belliard's continued and intentional failure to disclose Dr. Older's name during the discovery process. There is no mention of Vincenti's name or conduct in the final order dismissing the case.

Other than Belliard's personal affidavit, Belliard has failed to present any evidence which affords a reasonable basis for the conclusion that it is more likely than not that Vincenti's conduct was a substantial factor in bringing about the dismissal of her medical malpractice case. Belliard has offered no expert opinion supporting her allegations that Vincenti's advice was negligent or that different advice (immediate disclosure) would have rendered a different result (no dismissal). That is, there is no evidence of either negligence or proximate cause.

Accordingly, the Court concludes that there is no genuine issue of material fact for trial and that Vincenti is entitled to summary judgment as a matter of law.

It is therefore ORDERED AND ADJUDGED that:

1. Defendant, Leonard M. Vincenti's, Motion for Summary Judgment (Dkt. #82) is **GRANTED**.

2. The Clerk is directed to enter **JUDGMENT** against Plaintiff, Josie Belliard, and in favor of Defendant, Leonard M. Vincenti.

3. The Clerk is directed to terminate any pending motions and to **CLOSE** this case.

**DONE** and **ORDERED** in Tampa, Florida on November 29, 2007.

_____
JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel/Parties of Record

S:\Odd\2006\06-cv-1193 msj 82.frm